# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| FRANCES MÉNDEZ VÁZQUEZ<br><br>Plaintiff,<br><br>v.<br><br>ONE INC., D/B/A THE WINGS FAMILY RESTAURANT,<br><br>Defendant. | CIVIL NO.: 14-1394 (MEL) |

## OPINION AND ORDER

On May 14, 2014, Frances Méndez Vázquez (herafter "Plaintiff") filed the complaint in this case, alleging sexual harassment and retaliation by One Inc., D/B/A The Wings Family Restaurant (hereafter "the Restaurant" or "the Defendant") pursuant to Title VII of the Civil Rights Act of 1964, as amended, and the United States Constitution. Plaintiff also brings supplemental claims against the Defendant pursuant to the Constitution of the Commonwealth of Puerto Rico and the Puerto Rico Statutes known as Law 100 of June 30, 1959, as amended, 29 L.P.R.A. § 146 et seq. ("Law 100"); Law 17 of April 22, 1988, 29 L.P.R.A. § 155 et seq. ("Law 17"); Law 69 of July 6, 1985, 29 L.P.R.A., § 1321, et seq. ("Law 69"); Law No. 45 of April 18 1935, 11 L.P.R.A. § 7 et seq. ("Law 45"), and Law 80 of May 30th, 1976, 29 L.P.R.A. § 185a ("Law 80"). On April 7, 2017, the Defendant filed the pending motion for summary judgment. ECF No. 67. Plaintiff filed a response in opposition. ECF No. 70.[1]

---

[1] Defendant's initial motion for summary judgment was filed on April 15, 2016. ECF No. 36. Plaintiff opposed that motion (ECF No. 42) and Defendant filed a reply to Plaintiff's opposition (ECF No. 48). The original motion for summary judgment was subsequently denied without prejudice. ECF No. 66. The Defendant refiled the motion for summary judgment (ECF No. 67), which was opposed by Plaintiff (ECF No. 70). No reply has been filed with respect to the pending response in opposition. Accordingly, no reply has been considered for this opinion and order. Nevertheless, even if the Court were to rely on the Defendant's reply and objections at docket number 48, the conclusions in this opinion and order would be the same.

## I. SUMMARY JUDGMENT STANDARD

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992). Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation." Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (quoting Rodríguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant presents a properly focused motion "averring 'an absence of evidence to support the nonmoving party's case[,]' [t]he burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both 'genuine' and 'material.'" Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). For issues where the nonmoving party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence, but must affirmatively point to specific facts" in the record "that demonstrate the existence of an authentic dispute." McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995). The plaintiff need not, however, "rely on *uncontradicted* evidence . . . . So long as the plaintiff's evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine which version of the facts is most compelling." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (emphasis in original).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan, 904 F.2d at 115 (citations omitted). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. P. R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). The court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

## II. UNCONTESTED MATERIAL FACTS

Plaintiff was the Defendant's employee from June 2010 until August 2010 and from April 2011 until February 19, 2012, when she filed a police complaint related to an alleged sexual assault that day by Joseamid Rodríguez Franqui ("Rodríguez") at the Wings Family Restaurant. ECF No. 69 at ¶18; ECF No. 70-1 at ¶ 18; ECF No. 69 at ¶3; ECF No. 70-1 at ¶3. During her employment with the Defendant, Plaintiff was a server and performed administrative functions. ECF No. 69 at ¶ 2; ECF No. 70-1 at ¶2.[2]

On August 16, 2011, Plaintiff initialed every page of the Defendant's sexual harassment policy and placed her signature at the end of the document. ECF No. 69 at ¶ 6; ECF No. 70-1 at ¶6. The sexual harassment policy prohibits sexual harassment in the workplace, and informs employees among other things, that: (1) when they believe they have been sexually harassed at work they must file a complaint or report to the human resources officer who represents the company; (2) it is indispensable for anyone who witnesses any conduct that may be interpreted as

---

[2] Although Plaintiff was first employed by the Defendant in the year 2010, there are no allegations of harassment before April of 2011. See ECF No. 1 ¶¶ 12 and 14.

sexual harassment to report it immediately; (3) confidentiality is guaranteed; and (4) if the employee believes they have complained and received no response, they have the right to call the Labor Department. ECF No. 69 at ¶15.[3] The same day she signed the sexual harassment policy, Plaintiff was informed that Defendant had a head of human resources, Zenaida López Ortiz. ECF No. 69 at ¶4; ECF No. 70-1 at ¶ 4. On February 19, 2012, after the alleged sexual assault, Plaintiff left the Defendant's premises and never returned. ECF No. 70-1 at ¶30. Plaintiff's sole communication with the Defendant after February 19, 2012, was a letter to request her W-2 form.[4] ECF No. 69 ¶17; ECF No. 70-1 at ¶17.

### III. ANALYSIS

#### a. Title VII Sexual Harassment

Title VII provides a private right of action against any employer who "discriminate[s] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." Pérez-Cordero v. Wal-Mart Puerto Rico, Inc., 656 F.3d 19, 25 (1st Cir. 2011) quoting 42 U.S.C. § 2000e–2(a)(1). The First Circuit has recognized multiple ways in which sexual harassment can affect a term, condition, or privilege of employment. Quid pro quo harassment involves a supervisor using employer processes to punish a subordinate for refusing to comply with sexual demands. Id. This form of harassment is actionable because it involves explicit and tangible alterations in the terms or conditions of

---

[3] Defendant's proposed fact also noted that the policy requires that such reports be in writing. ECF No. 69 ¶ 14. The cited policy does not state that complaints must be "in writing." It states, "when you believe you have been sexually harassed in any manner at work, you must file your complaint or report to the Human Resources Officer who represents the company . . . ." ECF No. 69-2 pgs. 2 and 3. As Plaintiff disputes the Defendant's interpretation, this opinion and order relies on the original language in the sexual harassment policy.

[4] Defendant proposed as a fact that Plaintiff "never asked [the Restaurant] that she wanted them to pursue her claims of sexual harassment." ECF No. 69 at ¶ 10. This fact was not supported by its record citation, and therefore was not considered for the purposes of this opinion and order.

4

employment. Id. Alternatively, "[h]arassment that creates a sexually hostile and abusive work environment is actionable when it is sufficiently severe and pervasive to effect constructive alterations in the terms or conditions of employment." Id.

### 1. Hostile Work Environment

Plaintiff contends that Defendant discriminated against her with respect to the terms and conditions of her employment by creating a sexually hostile and abusive work environment. To succeed on her hostile work environment claim, Plaintiff must establish six elements: (1) that she is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and that she in fact did perceive it to be so; and (6) that some basis for employer liability has been demonstrated. Perez-Cordero v. Wal-Mart Puerto Rico, Inc., 656 F.3d 19, 27 (1st Cir. 2011).

Viewing the record in light most favorable to the non-movant, a reasonable jury could find that Plaintiff established the following. Rodríguez was Plaintiff's supervisor while she was an employee at the Restaurant. ECF No. 70-1 at ¶23. He is also one of Restaurant's owners along with his wife Yolanda Negrón (herafter "Negrón"), and Negrón's mother. Id. Any time Plaintiff had a shift with the Defendant after April of 2011, Rodríguez made sexual comments to her, including that he wanted to eat her ass, he wanted to see her in a g-string, he dreamed of putting her on all fours and doing whatever he wanted, he wanted to see her naked, he dreamed of her being his girlfriend, and that she was going to be his. ECF No. 70-1 at ¶29; ECF No. 70-2 pgs. 11-

12.[5] When Plaintiff and Rodríguez were in tight places at work, Rodríguez would walk by and rub his penis against her. Id. This conduct culminated on February 19, 2012, when Rodríguez called Plaintiff into his office, told her that she had a "pretty buttocks split," grabbed her by her hip, pulled down her jeans, told her to lower her voice, and touched her intimate body parts. ECF No. 70-1 at ¶ 31; ECF No. 70-4 at pg. 3. Plaintiff left the Defendant's premises that night, and never returned.

For the purposes of the pending motion, Defendant does not contest the first three elements of Plaintiff's hostile work environment claim—namely that Plaintiff is a member of a protected class, she was subjected to unwelcome sexual harassment, and that the harassment was based upon sex. ECF No. 68 at pg. 17 ¶ 2. The Defendant contends, however, that Plaintiff did not establish evidence of conduct that is sufficiently severe or pervasive. Several factors are relevant to the question of whether conduct is sufficiently severe or pervasive: "the severity of the conduct, its frequency, whether it is physically threatening or not, and whether it interfered with the victim's work performance." Gerald v. Univ. of Puerto Rico, 707 F.3d 7, 18 (1st Cir. 2013). With respect to frequency, Plaintiff contends that she was subject to sexual comments whenever she had a shift after April of 2011. As to severity, the alleged comments and touching are disturbing. It is no stretch that Rodríguez's conduct interfered with her work in light of her testimony that she was terrified by Rodríguez's conduct and never returned to the Defendant's premises after the alleged incident of February 19, 2012. Defendant argues that police determined the alleged conduct of February 19, 2012, was unfounded; however, Plaintiff's testimony disputes this conclusion.[6] See

---

[5] Exhibits are cited using the page number generated by the ECF system as opposed to the page number of the original scanned document.

[6] Defendant suggests that Plaintiff's testimony is not credible in light of the fact that she never mentioned her PRPD sexual assault complaint when she filed a complaint with the Equal Employment Opportunity Commission. It also notes that Plaintiff did not contest a Labor Department finding that she abandoned her employment. These credibility arguments are better left for the jury, as the Court may not weigh evidence on summary judgment.

ECF No. 70-1 at ¶ 20. Taking the evidence in a light most favorable to Plaintiff, a reasonable jury could find that the harassment was severe and pervasive.

The next inquiry is whether the complained of conduct was objectively and subjectively offensive. On the issue of subjective offense there is adequate evidence that Plaintiff regularly complained to Negrón about Rodríguez's comments, filed a police report after the alleged February 19, 2012 incident, and was terrified of Rodríguez's conduct. As to the objective perspective, a reasonable person could find the alleged touching, sexual assault, and lewd statements highly offensive and denigrating. Plaintiff presented more than enough evidence on this point to withstand summary judgment.

The final inquiry is establishing some basis for employer liability. The applicable standard for assessing employer liability depends upon whether the offending employees are supervisors or merely co-workers. Figueroa García v. Lilly Del Caribe, Inc., 490 F. Supp. 2d 193, 206 (D.P.R. 2007). An employer is vicariously liable when a supervisor's conduct creates a hostile work environment for its employees, unless the employer can demonstrate that it is entitled to the Faragher-Ellerth defense. Pérez-Cordero v. Wal-Mart Puerto Rico, Inc., 656 F.3d 19, 30 (1st Cir. 2011). While Defendant contends that Rodríguez is merely Plaintiff's co-worker, there is evidence that Rodríguez, at all relevant times, was her supervisor and one of the Restaurant's owners.[7] ECF No. 70-1 at ¶ 23. The Defendant contends that even if Rodríguez was Plaintiff's supervisor, it escapes liability because the Faragher-Ellerth defense applies in this case. "The Faragher–Ellerth defense comprises two necessary elements: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by

---

[7] Defendant's own exhibit G lists Rodríguez's occupation as "Owner Wings Rest." See ECF No. 69-7.

7

the employer or to avoid harm otherwise." Pérez-Cordero v. Wal-Mart Puerto Rico, Inc., 656 F.3d 19, 30 (1st Cir. 2011) citing Ellerth, 524 U.S. at 765, 118 S.Ct. 2257. This defense "was designed to protect only those responsible employers who have established effective sexual harassment policies and responsive grievance processes. To that end, an employer must carry its burden on both prongs to succeed in maintaining the defense." Agusty-Reyes v. Dep't of Educ. of Puerto Rico, 601 F.3d 45, 55 (1st Cir. 2010) (internal citations omitted).

As to the first prong, there is undisputed evidence that the Defendant had a sexual harassment policy in place during Plaintiff's employment and that Plaintiff was notified of said policy. See ECF No. 69 at ¶15. The Defendant contends that it acted reasonably to prevent and correct any sexually harassing behavior because it had a policy in place, and the only notification it ever received regarding harassment of Plaintiff was a notification by the Puerto Rico Police Department informing that it had received a complaint from plaintiff, and that PRPD investigation determined the complaint was unfounded.

As to the second prong, Defendant contends that even if Plaintiff experienced repeated harassment as she claims, she failed to take advantage of corrective opportunities by never submitting a written complaint to human resources. On the other hand, Plaintiff contends she would submit verbal complaints to Owner Negrón whenever there was an incident with Rodríguez and there was an opportunity to speak with Negrón. ECF No. 70-1 at ¶ 7. Negrón would give her the same response after each complaint: "that it was [Plaintiff], that it wasn't him, that that was [the] way he was, to continue [her] work." ECF No. 70-1 at ¶7; ECF No. 70-2 at pg. 10. Plaintiff also submitted complaints to Negrón's mother because she continued to receive unsatisfactory responses from Negrón. ECF No. 70-1 at ¶7. Plaintiff would also speak to the Human Resources Director Zenaida López about the alleged sexual harassment "any time [she] had access to [her],"

8

but that she rarely had access to López because López did not have an office at the Restaurant and if López "was to show up at the restaurant twice a month, that was a luxury." ECF No. 70-1 at ¶4; ECF No. 70-2 at pg. 18.[8]

In the end, there is evidence that Defendant took no corrective action in spite of repeatedly receiving complaints of sexual harassment. Under these circumstances, a reasonable jury could find that the Defendant has failed to establish that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior. Based on the same circumstances, a reasonable jury could find that the Defendant failed to establish that Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. The mere fact that Plaintiff did not submit a written complaint does not doom her case. While the sexual harassment policy provides that employees must "file" complaints to the Human Resources Officer, ECF No. 69-2 at pg. 2, and the word "file" usually connotes a written document, there is more than one reasonable way to interpret this clause. A reasonable jury could find that Plaintiff met her duty to "file" a complaint by submitting verbal complaints. Nor is it unreasonable for Plaintiff to channel the bulk of her complaints through Negrón in light of the evidence that Negrón is one of the owners of the Restaurant and that Plaintiff rarely had access to a human resources officer. "When a supervisor's behavior is at issue, an employee need only make 'reasonable' use of the reporting procedures provided by her employers to render the Faragher-Ellerth defense unavailable." Agusty-Reyes v. Dep't of Educ. of Puerto Rico, 601 F.3d 45, 56 (1st Cir. 2010). In sum, there is sufficient record evidence for a reasonable jury to find in Plaintiff's

---

[8] Even if Rodríguez is merely a co-worker, there is sufficient evidence to establish liability under the theory of co-worker harassment. "To establish employer liability for a non-supervisory co-employee, a plaintiff must demonstrate that the employer knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate action. Crowley v. L.L. Bean, Inc., 303 F.3d 387, 401 (1st Cir. 2002) (internal quotations and citations omitted). Plaintiff carried this burden in light of her testimony that after she repeatedly informed Negrón of Rodríguez's harassing conduct, the Defendant took no corrective action.

favor with respect to her hostile work environment claim. Therefore, the Defendant's request to dismiss the same is DENIED.

## 2. Quid Pro Quo Harassment

"Quid pro quo sexual harassment is when a supervisor uses his superior position to extract sexual favors from a subordinate and, if rebuffed, retaliates by taking action that adversely impacts the subordinate's employment. This type of harassment can be shown where a supervisor uses employer processes to punish a subordinate for refusing to comply with sexual demands." Gerald v. Univ. of Puerto Rico, 707 F.3d 7, 20 (1st Cir. 2013) (internal citations and quotations omitted).

At the outset, Plaintiff failed to raise a quid pro quo claim in the complaint. Despite making specific reference to a hostile working environment, the complaint lacks even a conclusory statement that Rodríguez conditioned her job benefits or permanence on submission to sexual advances. See id.

Even if Plaintiff had sufficiently alleged a quid pro quo claim, the same does not survive summary judgment. Plaintiff identified no evidence that decisions or actions regarding her employment status or benefits were used to punish her for refusing Rodríguez's sexual demands. The only adverse employment action in Plaintiff's personnel file is an admonishment for taking an unauthorized meal break, which she does not contest.

Plaintiff argues that "since the plaintiff refused Rodríguez['s] unwelcome sexual advances, she had to involuntar[ily] resign from her position." ECF No. 70 at pg. 5. In essence, she contends that she was forced to resign because Rodríguez's continued sexual advances made her working conditions intolerable. But this argument confuses the elements of quid pro quo and hostile work environment harassment. Cases based on threats to punish or actual punishment against an employee if the employee denies sexual advances are often referred to as quid pro quo cases, as

distinct from unwanted sexual attentions that are sufficiently severe or pervasive to create a hostile work environment. See generally Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 751 (1998); Gerald v. Univ. of Puerto Rico, 707 F.3d 7, 24 (1st Cir. 2013).

Although Plaintiff identified more than enough evidence to survive summary judgment on her claim of a hostile working environment, the same does not necessarily equate to the quid pro quo variety of sexual harassment. See Bonenberger v. Plymouth Twp., 132 F.3d 20, 28 (3d Cir. 1997) (affirming dismissal of a plaintiff's quid pro quo claim based on constructive discharge where plaintiff failed to submit evidence that employer intended to force the plaintiff's resignation) see also Rogers v. City Cty. Health Dep't of Oklahoma Cty., 30 F. App'x 883, 888 (10th Cir. 2002) ("By definition, a claim of *quid pro quo* sexual harassment must be supported by a negative employment action that is separate and distinct from the underlying sexual misconduct"). While there is ample evidence that Plaintiff experienced continuous unwelcome sexual advances, Plaintiff identified no evidence that Rodríguez's motivation for continuing to harass Plaintiff was to punish her for refusing his initial advances. Therefore, Plaintiff's Title VII sexual harassment claim under the theory of quid pro quo, to the extent it was ever raised, is dismissed.

### b. Title VII Retaliation

In addition to prohibiting employers from discriminating on account of sex, Title VII also contains an anti-retaliation provision which prohibits an employer from "discriminat[ing] against" an employee or job applicant because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation. 42 U.S.C.§ 2000e–3(a); Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 56 (2006). To prove a claim of retaliation under Title VII, a plaintiff must establish that: (1) she engaged in protected conduct; (2) she experienced a materially-adverse employment action; and (3) there is a causal link between the protected conduct and the adverse employment action. Calero-

Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004). If a plaintiff makes this showing the burden swings to the defendant "to articulate a legitimate, non-retaliatory reason for its employment decision." Collazo v. Bristol-Meyers Squibb Mfg., Inc., 617 F.3d 39, 46 (1st Cir. 2010). If a defendant can do this then the burden shifts back to the plaintiff to show that the reason is pretext and that retaliatory animus was the true motive behind the decision. Id.

Plaintiff contends that she engaged in protected conduct by verbally complaining about Rodríguez's harassing conduct to Negrón, Negrón's mother, and López. ECF No. 70-1 at ¶¶ 4-7 (citing Plaintiff's deposition). In addition to protecting the filing of formal charges of discrimination, Title VII's retaliation clause protects informal protests of discriminatory employment practices, "including making complaints to management." Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990). While Defendant disputes that Plaintiff complained of sexual harassment, Plaintiff's testimony is sufficient for a reasonable jury to find that she engaged in protected conduct.

As to the second element of a *prima facie* case, Plaintiff argues that Negrón took adverse employment actions by failing to take any type of corrective action, telling her that "it was me [Plaintiff], that it wasn't him," (ECF No. 70-2 at pg. 10), and "that's just the way he was and [that] if I didn't like it then I could leave." ECF No. 70 at pg. 18; ECF No. 70-2 at pg. 13 lines 2-3. A materially adverse employment action is one in which the action "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal citations and quotations omitted). An unfulfilled threat could amount to a materially adverse employment action. See Wirshing v. Banco Santander De Puerto Rico, 57 F. Supp. 3d 138, 142 (D.P.R. 2014). While Negrón may have merely been conveying her disagreement with Plaintiff's allegations, her statement that if Plaintiff did not

like Rodríguez's conduct she could leave is within the realm of what a reasonable jury could find materially adverse because a reasonable person could interpret Negrón's statement as a threat to terminate her if she made further complaints. This might well dissuade a reasonable worker from making or supporting a further charge of discrimination. Plaintiff stated that although she filed a complaint to human resources, "I could not have the luxury of going to the Department of Labor because I was the only one providing for my home to sustain and maintain my home and I couldn't lose my job." ECF No. 70-2 at pg. 17. Plaintiff's subjective interpretation does not necessarily mean Negrón's statement is materially adverse; however, it is hard to say her interpretation of Negrón's words is unreasonable in light of the evidence that Negrón is the owner of the Restaurant and the wife of the alleged harasser. When statements are ambiguous, context and inflection play an important role in determining meaning. Due to the ambiguity of Negrón's words, determining whether they were materially adverse is better left to the jury and their collective lay wisdom. A reasonable jury could also find that Defendant's failure to take corrective action was materially adverse because Rodríguez's alleged conduct, escalating to the assault of February 19, 2012, might well intimidate a reasonable worker into not pursuing further charges of discrimination. Tolerating "workplace harassment, if sufficiently severe or pervasive, may in and of itself constitute an adverse employment action sufficient to satisfy the second prong of the prima facie case for Title VII retaliation cases." Noviello v. City of Boston, 398 F.3d 76, 89 (1st Cir. 2005).

With respect to the final element of the *prima facie* case, a reasonable jury could infer a causal link between Plaintiff's protected conduct and Negrón's putative threat to terminate Plaintiff in light of the evidence that Negrón's statement came on the heels of one or more of Plaintiff's complaints to her. "Where adverse employment actions follow close on the heels of protected activity, a causal relationship may be inferred." Mole v. Univ. of Massachusetts, 442

Mass. 582, 595, 814 N.E.2d 329, 341 (2004). A reasonable jury could also infer a causal relationship between Plaintiff's complaints to Negrón and Rodríguez's alleged assault on February 19, 2012, due to the proximity of her complaints and the conduct at issue. There is a reasonable inference that Rodríguez, as Negrón's husband, was aware of Plaintiff's complaints to Negrón. Plaintiff's deposition testimony that she complained to management of Rodríguez's harassing conduct at least twice a month during her employment after June of 2011 implies that she had complained shortly before the events of February 19, 2012. Based on this proximity, a reasonable jury could infer that Rodríguez acted as he did on February 19, 2012, in retaliation for Plaintiff's complaints. In sum, there is sufficient evidence in the record for a reasonable jury to find that Plaintiff established a *prima facie* case of retaliation. Therefore, Defendant's request to dismiss Plaintiff's retaliation claim is DENIED.[9]

### c. Local Law Claims

Based on the same factual allegations supporting her Title VII claims, Plaintiff asserts several causes of action under the Constitution of the Commonwealth of Puerto Rico and the following Puerto Rico Statutes: Law 17, Law 69, Law 100, Law 45, and Law 80. Defendant requests their dismissal, arguing that the court should decline to exercise supplemental jurisdiction over Plaintiff's local claims because there is no viable federal claim. This argument is untenable because Plaintiff's hostile work environment and retaliation claims under Title VII remain.

#### 1. Hostile Working Environment under Laws 17, 69, and 100

Alternatively, Defendant requests dismissal of Plaintiff's claims pursuant to Law 17, 69, and 100 on the grounds that she cannot establish a *prima facie* case of the same. "Law 17, Law 69,

---

[9] The only challenge Defendant articulated with respect to Plaintiff's retaliation claim is that Plaintiff never engaged in protected conduct prior to abandoning her employment on February 19, 2012. Accordingly, the final stage of the burden-shifting framework is not discussed.

and Law 100 serve virtually identical purposes and outlaw virtually identical behaviors. Each proscribes sexual harassment in the form of a hostile work environment." Figueroa Garcia v. Lilly Del Caribe, Inc., 490 F. Supp. 2d 193, 212 (D.P.R. 2007) citing Suarez Ruiz v. Figueroa Colon, 145 P.R. Dec. 142, 148–49 (1998) and Miro Martinez v. Blanco Velez Store, Inc., 393 F.Supp.2d 108, 114 (D.P.R.2005). "Law 17, the most recent and specific of the laws addressing sexual harassment, largely tracks the language of the EEOC guidelines regarding hostile work environment claims. This court has recognized that Law 17 conforms to the hostile work environment requirements established in Title VII." Figueroa Garcia v. Lilly Del Caribe, Inc., 490 F. Supp. 2d 193, 212 (D.P.R. 2007) citing Garcia v. Suarez & Co., 288 F.Supp.2d 148, 161 (D.P.R.2003). Because Plaintiff's Title VII hostile work environment claim survives summary judgment, so too do her hostile work environment claims under Laws 17, 69, and 100. See Figueroa Garcia v. Lilly Del Caribe, Inc., 490 F. Supp. 2d 193, 212 (D.P.R. 2007) (treating hostile work environment claims under Title VII and laws 17, 69, and 100 the same) see also Aponte-Rivera v. DHL Sols. (USA), Inc., No. 07 C 1950, 2010 WL 376330, at *2 (D.P.R. Jan. 25, 2010) and Garcia v. V. Suarez & Co., 288 F. Supp. 2d 148, 161 (D.P.R. 2003).

## 2. Quid Pro Quo under Law 17

Law 17, in pertinent part, prohibits "any type of undesired sexual approach, demand for sexual favors and any other verbal or physical behavior of a sexual nature . . . [w]hen submission to said conduct becomes, implicitly or explicitly, a term or condition of a person's employment" or "when submission to or rejection of such conduct by the person becomes the grounds for making employment decisions or regarding the job that affect that person." 29 L.P.R.A. § 155b. As already discussed, Plaintiff failed to identify evidence that submission to Rodríguez's advances became a term or condition of her employment or that her reaction to his advances were grounds for making

employment decisions. Therefore, to the extent that Plaintiff's quid pro quo claim under local law was raised, the same is DISMISSED.

### 3. Retaliation under Law 17

In addition to prohibiting sexual harassment, "Law 17 also protects employees against retaliatory actions taken by an employer due to an employee's participation in the lodging or investigation of a sexual harassment complaint." Perez-Rodríguez v. Wyndham Vacation Ownership, No. CIV. 12-1287 GAG, 2014 WL 651972, at *13 (D.P.R. Feb. 19, 2014) citing P.R. Laws Ann. tit. 29, § 155h; Matos Ortiz v. Puerto Rico, 103 F.Supp.2d 59, 63 (D.P.R.2000). While the Defendant requests dismissal of Plaintiff's Title VII retaliation claim, it neglects to address whether her retaliation claim pursuant to local laws should be dismissed on the merits. Therefore, Plaintiff's retaliation claim pursuant to Puerto Rico law remains.

### 4. Unjust Dismissal Under Law 80 and Workers Compensation Under Law 45

Plaintiff brings a claim for unjust dismissal under Law 80. The complaint also makes reference to seeking relief under Law No. 45 of April 18 1935, PR Laws Ann. T. 11 sec. 7 et seq. ("Law 45"). As the Defendant's motion for summary judgment makes no reference to Law 80 or Law 45, no action is taken on the same at this juncture.[10]

## IV. CONCLUSION

For the foregoing reasons, the Defendant's motion for summary judgment (ECF No. 67) is GRANTED IN PART AND DENIED IN PART. Plaintiff's state and federal sexual harassment

---

[10] Law 45 is also known as the "Compensation System for Work Related Accidents Act." 11 L.P.R.A. § 1. The complaint's sole reference to Law 45 is in the statement of jurisdiction. See ECF No. 1 at ¶2 ("The plaintiff also invokes this Court's supplemental jurisdiction pursuant to 28 U.S.C. sec. 1367, and seeks relief under Puerto Rico's . . . Law No. 45 of April 18 1935, PR Laws Ann. T. 11 sec. 7 et seq. . . . ."). Although the factual basis for a claim under Law 45 is not apparent from the allegations of the complaint, nor is it clear what basis if any there are for Plaintiff's claims under the United States Constitution and the Puerto Rico Constitution, the Defendant has not moved for dismissal of the same apart from requesting that the court decline to exercise supplemental jurisdiction over all local claims.

claims under the quid pro quo theory, to the extent they were properly raised, are dismissed. All other claims remain.

    IT IS SO ORDERED

In San Juan, Puerto Rico, this 11th day of September, 2017.

s/Marcos E. López  
U.S. Magistrate Judge